Jordan v. Brumfield. How do you pronounce it? Courageous? Courageous. All right. Is that symbolic of your role here? I certainly hope so. All right, press ahead sir. Yes, my name is Owen of the appellant, Aaron Jude Jordan. As the Court is aware, this case came from the granting of a 12b6 motion by the district court on the basis that the officer-defendant was entitled to qualified immunity. His decision diverged quite a bit from the argument that the parties had made. He based it on the statement that the affidavit was adequate and therefore immunized him. There are a lot of issues in this case. Obviously, it's a Section 93 case. There is Linnell liability and a lot of other issues attached to that. However, I'd like to focus my real argument on essentially one question that I think is most central to this case, and that is whether an officer is entitled to qualified immunity when he submits a warrant application for criminal stalking based upon the sending of communications to third parties and the affidavit does not describe the contents of those communications in any fashion. Essentially, this boils down to the idea that the affidavit submitted by Officer Brumfeld was what has been called in this Court a bare-bones affidavit. Quoting United States v. Satterwhite, a bare-bones affidavit contains, quote, wholly conclusory statements which lack the facts and the magistrate can independently determine probable cause. In this case, the affidavit was charging Mr. Jordan, the appellant, with criminal stalking. Stalking in Louisiana under Louisiana Revised Statute 14, colon 40.2, has four elements. It is the intentional and reasonable person to feel alarmed or to suffer emotional distress. There's more text there, but that's essentially the core of the statute. In this case, the affidavit relative to Mr. Jordan's actions made three separate allegations. First, that he intentionally and repeatedly harassed the alleged victim by sending letters to, quote, employers and clients. Two, that he harassed the staff for whom she worked in the courts during the time he had a case in which he was convicted for trespassing in 2009. And three, also harassed the judge who sentences him and the judge's wife and family. In this case, I'm going to focus on the final two elements, which are the meat of the stalking statute, which are the harassing of another person that would cause a reasonable person to suffer emotional distress. I'm focusing on harassing rather than following because there were no allegations of following in this case. Indeed, there were no sexual contact between Mr. Jordan and the alleged victim at all. First of all, the definition of harassing of another. Harassing is a defined term under the statute. In Louisiana Rights Statute 1440.2 subsection C1 and C2, there are definitions that further explain what constitutes harassing. Essentially, it boils down to harassing as a pattern of uninvited conduct, whether it be verbal or nonverbal, that evinces an intent to inflict emotional distress and is not constitutionally protected. So by itself, the definition of harassment is extremely broad, but it is further narrowed by the statute. However, even the base definition of harassment in the statute requires the identification of a victim to whom the alleged harassment is directed. That's why, of course, it says harassing of another. In this case, the affidavit did not include any representations as the content of the letters, so it was impossible to say whether they constituted indirect attempts to communicate with the victim or otherwise affect the victim in any fashion. There was simply no telling. There was no way to tell whether there was a victim at all or who the victim was. There was simply no information for the magistrate to rely on. Louisiana courts have recognized that this communicative element is required. I cited a State v. Ryan in my brief from the Louisiana Third Circuit in which they stated that the examples of nonverbal behavior in the statute are all communicative in nature and that, therefore, and that appears to clarify and codify the principles set forth in the statute, in that case, a threat communicated by the defendant. In this case, that is missing. There's not even an allegation that — there's no allegation that anything was directed towards the alleged victims. Secondly, you know, again, those subsections in C-1 and C-2 require that the alleged conduct evince an intent to inflict emotional distress and not be constitutionally protected without knowing what the letters said. There was no way for the court to determine whether or not they were constitutionally protected. The court could not exercise its expertise. The City has argued that Officer Brumfield is not expected to be a, you know, First Amendment expert in the field, and of course that is true, but he has to give sufficient facts to the magistrate to utilize his expertise. And in this case, he did not do that. He did not describe the contents of these alleged letters in any way, shape, or form. Furthermore, getting to actually the underlying factual allegations in this case, in his complaint, an appellant alleged that he was communicating on matters of public concern, specifically that there were well-publicized allegations of nepotism and possible corruption made against the chief municipal judge for Orleans Parish, who was the victim's uncle, the alleged victim's uncle, which is, of course, a textbook example of a matter of public concern because it deals with potential crimes or improprieties committed by public officials. Indeed, the victim was actually a minute clerk in her uncle's courtroom along with 17 of her relatives. The complaint also specifically alleged that the letters were based on those news reports and a letter from the New Orleans Inspector General, and that they, quote, did not contain any threats or misleading or false statements. In other words, that they didn't fall under any of the exceptions to the First Amendment. Again, you know, they're cited in a, you know, the D.C. Superior Court, which I believe is, has persuasive reasoning. In that case, the defendant, who was a registered, who in that case was a registered sex offender, had created a website and distributed flyers condemning the sexual, the sex offender registry and targeting an employee of the agency. The employee applied for a protective order alleging that it was stalking, and the D.C. Superior Court denied it, holding that to say that that was not the case. So, criminalized much political speech. The next element of the offense that I do want to address is that the, is the requirement that the behavior, the alleged, you know, harassing of another was such that would cause, quote, cause a reasonable person to suffer emotional distress. Without the contents of the letters, it's impossible to tell whether a reasonable person would suffer emotional distress. Officer Brumfield's affidavit did state that the alleged victim stated that undefined harassment had, quote, made her suffer emotional distress. But that's a subjective response. It's an, the standard's objective, a reasonable person's standard, and without knowing the contents, there was no way for a reasonable person would have suffered emotional distress from reading them. And again, you know, the underlying factual allegations of Appellant's complaint stated that he had merely provided information regarding allegations against the alleged victim and the alleged victim's family from public news reports pertaining to alleged corruption, potential malfeasance, nepotism in the municipal courts of the City of New Orleans. A reasonable person would not have suffered emotional harm from merely having things publicized which had already been in the news, which had already been in the Times-Vicu, in the Advocate, WDSU, virtually every major, you know, news outlet, essentially, you know, naming her in connection with this. Actually, just returning for a moment, also the final two allegations, of course, without the contents of the letters, that's a problem, but these additional allegations of harassing the staff in the courts and harassing the judge, I believe, can be completely disregarded because they're wholly conclusory. No behavior is actually described at all. It's just Appellant harassed third parties. And, of course, harassment, harassing is a defined term under the statute. You would need to describe, the officer would have needed to describe the underlying conduct. Furthermore, you know, to the extent that he was alleged, he was harassing, you know, the court staff in his, earlier in this proceeding that was, occurred several years before, I cite the case of State v. Young, it's that he had a right to be there. He had a right to participate in proceedings. He had a right to contact the judge. In State v. Young, the First Circuit overturned the conviction of a pro se litigant who had been convicted of stalking his judge because his conduct, which consisted of calling and writing the judge and showing up to court even on days when his case wasn't called, might have been annoying, but it was constitutionally protected. Again, constitutionally protected is actually, you know, an element within the offense. And it is up to the officer to provide adequate facts to allow the magistrate to make that determination of whether or not probable cause exists under the statute. A few minor issues. Of course, this is a 12b6 motion. Under 12b6 motions, issues pertaining to, like, the intent of a party, which is obviously present here. It's, in fact, one of the elements in the statute. It's normally inappropriate for that. It's inappropriate for First Amendment cases where there are rights at stake. Essentially, this would obviously be better positioned from the perspective of the city if it had gone up on summary judgment. And I believe that it was essentially treated as such. The judge raised inferences in the city's favor, such as assuming, contrary to that, without any basis in the allegations of the complaint, that Officer Brumfeld had merely repeated what the victim told him, which, first of all, doesn't seem to really wash because there was virtually no information in the affidavit. And, two, it is, of course, the plaintiff that is entitled to all reasonable assumptions and not the defendant in those cases. Lastly... What does the record show about who actually drafted the affidavit? Officer, well, it's based on the complaint... I know he signed it, but who drafted it? It's alleged in the complaint that Officer Brumfeld drafted and submitted it. There's the, of course, you know, it's based on the complaint, but also the city submitted a copy of the affidavit and attached it to their motion to dismiss. I did not oppose that because I quoted it extensively in the complaint. And, to my knowledge, they never contested that Officer Brumfeld drafted and submitted it to the magistrate. All right. Finally, just to cite one other issue, if the, to the extent, you know, the officer was using harassment, you know, just as a generic term rather than a specific legal term under the statute, that actually makes this even more problematic because this Court has recognized that harass, the words harass, harassment, any variant thereof, may contain completely different meanings depending on the context. It turns into an eye of the bull or standard. You need to describe specific underlying conduct. This makes it similar to the case I cited, Spencer v. Stratton, where the affidavit was considered bare bones where it only said that the suspect had helped her husband evade law enforcement. Again, just saying help doesn't really convey what the conduct was. Your position is any reasonable officer would have known that he didn't, he didn't state probable cause for a crime by Mr. Jordan? Yes, exactly, is that he would have been required to at least state something regarding the crime. Something, well, in this case, you know, Mr. Jordan concedes that there were letters, but he would have had to state what they actually said that made them harassing and there was nothing to indicate that they were or even directed towards the alleged victim. All right, thank you, sir. You have reserved your rebuttal time. All right, Mr. Frazer. Mr. Frazer, what crime was their probable cause stated for by the affidavit or by Mr. Brumfield? Mr. Officer Brumfield completed an affidavit for the crime of stalking.  Stalking. Stalking? Yes, under Louisiana Revised Statute 14, Section 14, Chapter 4040.2A was the crime of stalking. Good morning, Your Honors. Talking about letters. Matthew Frazer on behalf of Appellee's Officer Derek Brumfield in the City of New Orleans. Your Honors, this entire case really turns on the answers to two relatively straightforward questions. The first one is, based on the facts as pled by Mr. Jordan, accepted as true and with all reasonable inferences drawn in his favor, was it entirely unreasonable for Officer Brumfield to have even applied for a warrant? Now, what are those facts that he himself has pled? That Mr. Jordan was in fact previously convicted in municipal court of a crime by Judge Paul Sens, that Mr. Jordan believed that his case had been mishandled and subsequently filed complaints against that judge for that case. That he then took it upon himself to mail targeted letters about the members of Judge Sens' family, including the complainant here, and sent it to their employers and their clients. Not publicly distributed, sent it, targeted letters, to employers and business associates of Judge Sens' family. Now you? And that Mr. The officer was in his affidavit? I'm sorry. Can you repeat that? Was all of this you're telling us in his affidavit? No, Your Honor. This, well, not the part about the previous conviction, I believe. This was all pled in the complaint. These are all alleged facts in the complaint. That he had been previously convicted by Judge Sens, that he believed his case was mishandled, and that he began sending letters about members of Judge Sens' family to their employers and clients. And he also acknowledges in the complaint that he was in fact a founding member of this group in the French Quarter of gun enthusiasts who got together in response to a crime problem in the French Quarter. So given all of that, in the complaint, that he himself readily admits, was it entirely unreasonable for Officer Brumfield to have applied for a warrant? And then secondly, even if Officer Brumfield was mistaken in applying for the warrant, did the fact that a neutral magistrate looked at the affidavit, found that probable cause did exist, did that sever the requisite causal link between Officer Brumfield's actions and Mr. Jordan's arrest, thus immunizing Officer Brumfield from liability as well as the city? Now Judge Afric has looked at these questions and issued two separate rulings, concluding both times that a reasonable officer could have concluded that a warrant should issue under the circumstances. Officer Brumfield is therefore entitled to qualified immunity and the case must be dismissed. And Mr. Jordan has not shown that Judge Afric's rulings were improper or in contravention of the law. So as I stated, Your Honor, taking the qualified immunity piece, as I'm sure your honors know, government officials are entirely immune from suit for their actions, official actions, unless those actions are found to be plainly incompetent or in contravention, knowingly violate the law. And here, the facts alleged by Mr. Jordan in the complaint simply do not allow for a reasonable inference that Officer Brumfield's actions were indeed plainly incompetent or knowingly violated the law. And the qualified immunity doctrine ensures that insubstantial claims against officials are resolved at the earliest possible stage of litigation, even prior to discovery. And the purpose behind that is clear because an officer who is given information suggesting that a crime may have been committed should not be forced to choose between facing charges of dereliction of duty for choosing not to act on that information, or conversely, choosing to act on the information and then later being hit with civil damages because it turns out that indeed no crime was in fact committed. And once a defendant has raised qualified immunity, the burden at that point shifts to the plaintiff to establish that indeed a constitutional right was clearly established at the time of the violation, and three, that it was done through conduct that was objectively unreasonable. So, accepting for the moment the premise that an improper arrest would be a violation of a constitutional right that was clearly established, then the question becomes, was Officer Brumfield's conduct objectively unreasonable? And again, Judge Afric concluded that it was not. The general rule in this circuit under Triplett is that a warrant issued by a neutral magistrate is the clearest indication that an officer has acted in an objectively reasonable manner, and of course that's what happened here. Now, Triplett lays out four exceptions to that basic rule. Two of those exceptions, Judge Afric looked at and decided that they categorically, those exceptions do not apply to the facts of this case, and I don't believe that Mr. Jordan challenges that finding. So, there are two potential Triplett exceptions that Judge Afric looked at. The first being whether the officer has intentionally misled the magistrate or recklessly disregarded the truth, and Mr. Jordan simply pleads no facts in the complaint that would allow this court to draw, or any court to draw, a reasonable inference that Officer Brumfield had intentionally misled the magistrate. He doesn't plead anywhere in the complaint that Officer Brumfield withheld information from the magistrate or otherwise misrepresented information to him. In fact, he readily admits most of the allegations in the affidavit, that Mr. Jordan wrote the letters, that he was targeting members of the Sens family, and that he was a member of this group in the French Quarter. And indeed, Judge Afric found exactly the opposite. He found that it is reasonable to conclude that Officer Brumfield simply listed in the affidavit the information provided to him by the victim, including Jordan's reputation as a gun rights advocate, and left it for the magistrate judge to decide if probable cause existed. Your Honors, it is not this court's job, or the district court's job, to consider every possible factual scenario beyond what was specifically pled in the complaint. He does not allege in the complaint that Officer Brumfield misled the magistrate. Therefore, this court is under no obligation to assume that he did. So, as I said, Judge Afric looked at this exception and determined that this exception that could potentially apply would be whether the warrant application is so completely bereft of information demonstrating the existence of probable cause that it is entirely unreasonable for the officer to believe it. And here, Your Honors, we would submit that although you know, this may not have been the most eloquent affidavit ever written in history, there was enough information in that affidavit to allow the magistrate to determine that yes, there was probable cause. It was more likely than not that a crime had been committed. And Judge Afric, in his opinion, recognized that the threshold for establishing that it is entirely unreasonable to believe that probable cause existed is indeed a high one. This court, in Spencer, said that it must be obvious that no reasonably competent officer could have concluded that a warrant should issue under the circumstances. And in Messerschmidt, the Supreme Court said that even where a magistrate has acted mistakenly in issuing a warrant, but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable. And again, that is precisely what happened here. The magistrate looked at this and decided that it would provide a probable cause. Now, Mr. Jordan does point to the Spencer v. Staten case, and there you know, this court did in fact overturn a grant of qualified immunity, finding that it was a bare-bones affidavit. But that case is very distinguishable from here. That was the affidavit submitted by the officer to the judge. The plaintiff in that case had been arrested as an accessory after the fact to murder. And the affidavit that the arresting officer submitted to the magistrate was one sentence that simply said the suspect helped the murder suspects evade law enforcement. That was it. That was the entire affidavit, provided absolutely no information about what, when, where, or how that was committed. Here, Officer Brumfield has a full paragraph of information, makes it absolutely clear that Mr. Jordan is alleged to have harassed his victim, that he had done it before, that the harassment was in the form of sending these letters to third parties, and that the complainant feared for her safety because of his publicized affinity for guns and we call it vigilantism, but he disagrees with that characterization. And Your Honors, we would submit that this was more than enough information for a magistrate to find probable cause. The fact that the district attorney later chose not to prosecute Mr. Jordan for the crime does not affect whether or not it was in the range of a magistrate to simply find that probable cause existed. Judge Afric agreed and granted qualified immunity. And so, Officer Brumfield's actions in applying for the arrest warrant were objectively reasonable, even if perhaps mistaken. The causal chain that is required between his actions and the magistrate's finding of probable cause was broken and Judge Afric held twice that the allegations of the complaint simply therefore do not overcome Officer Brumfield's entitlement to qualified immunity. If I could quickly address his First Amendment claims. It is clear that the First Amendment does not provide an unfettered right to say or write anything at any time about anyone. There are indeed, the Court has indeed recognized limits to First Amendment protections. There are some types of speech that are categorically recognized as not being protected. That includes conduct integral to criminal conduct or communications integral to criminal conduct. And here, the communications suggested that it was in furtherance of stalking. That he was harassing the victim through these communications, which created a stalking charge. And therefore, we would submit that this then falls outside of First Amendment protections. But even if the conduct, even if the communications were protected, that ignores the critical piece that says that that constitutional right must have been clearly established at the time of the incident. Now, we have lawyers and judges determining whether or not these particular communications were protected First Amendment speech or unprotected conduct. Well, Officer Brumfield is an officer. He is not a constitutional scholar that can sit and ponder these questions. And he made a determination in the course of duty that this was not protected. And it would it does not require that he be held accountable for not being as sophisticated in his knowledge of First Amendment law as a magistrate. And that is why we have a magistrate. And the magistrate indeed looked at this and agreed that yes, this was probable cause of a crime. Mr. Jordan did not address the Monell claims against the city in his oral argument and so I will just briefly touch on them. Of course, if this court determines that it was reasonable to believe, if it was reasonable for Officer Brumfield to believe that probable cause existed then, of course, he's entitled to qualified immunity and the claims against the city must be dismissed because, of course, the city cannot be held liable for an officer who acted reasonably. However, that being said, if it is determined that Officer Brumfield was not reasonable then the claims against the city turn on the Monell case, which says that municipality cannot be held liable under Section 1983 unless it was shown that the behavior arose from the execution of a government's policy or custom. Again, decisions of the Supreme Court and this court since Monell have made it clear that this is a very high bar for a plaintiff to clear. In Alton, this court said that actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference. So to establish liability under a Monell, Mr. Jordan would have to show an official policy or custom implemented by a policy maker for the city and that that was the moving force behind the violation of his constitutional rights. And there is simply no city policy or custom here that has been established that encourages officers to arrest citizens without probable cause. You know, he points, at one point he points to the Department of Justice report from 2011 as evidence and the Eastern District in the Barrios case already looked at that very question and decided no. The Department of Justice report about the New Orleans Police Department does not sufficiently in and of itself provide Monell liability for cases against the NOPD. Because in fact, if that were the case basically every case against the NOPD would result in liability for the city based on the findings of that report. But there was no specific connection between the findings of that report in 2011 and the actions of the officer here that took place in 2014. And because there is no connection between those two things, he cannot use that as a basis for liability. And of course as I mentioned before, there must be established a causal link between Officer Brumfield's actions and Mr. Jordan's arrest. This court said previously that if facts supporting an arrest are placed before an independent intermediary such as a magistrate, the intermediary's decision breaks the chain of causation for false arrest. And again, that is what happened here. Officer Brumfield completed the affidavit, a neutral magistrate reviewed it, decided that it constituted probable cause, and issued the warrant. Mr. Jordan has simply not shown that Officer Brumfield's actions were objectively unreasonable and that no reasonable officer could have possibly concluded under these circumstances that a warrant should issue and a neutral magistrate broke that causal chain. Therefore, he's entitled to qualified immunity. All right. Thank you, sir. I think we have your argument. Appreciate it. Mr. Courageous, back to you. Your Honor. First of all I'd like to address the fact, I mean, the city repeatedly repeats that Judge Afric had made a ruling in Judge Afric's de novo review because it's from a 12B6 motion. His ruling is not entitled to deference. I would also note that again, which, you know, I briefed that he stated two things that just simply weren't true. One, that the affidavit contains quote, some detailed description of harassing behavior. The only thing it said is that letters were sent. Let's cut to the chase. I mean, we know you differ in terms of the scenario and all that, but you know your hurdles. Qualified immunity, the Monell cases, you didn't argue those and so on. So, I mean, we got your brief and we know all the facts. So, let's get to the pressure points that you got to get over. So, you've alleged it was a bare bones affidavit, etc. You know what the law is on qualified immunity. I mean, it's tough. Stronger than Ajax, as I like to say. So, counsel opposite has said, you know, only those who are plainly incompetent, quote, unquote. So, make your best case not on re-arguing the facts but where your case fits in within the Supreme Court law and the controlling law in this case. We understand the case, the letters, what you put in and all that. I mean, you got three minutes to kind of hit it. The affidavit was so deficient. It included virtually no information. Simply repeating, he harassed, he harassed. That's just repeating an element of the offense. That is bare bones. That is what bare bones is. It's just you go through the elements of the offense. You don't really say what actually happened. He didn't describe anything. You can't win, unless you tell me the case. You can't win. I mean, assuming we agree. But I'm saying, I don't know that you can win a case merely by convincing us that it's a bare bones affidavit. I'm just trying to get your argument. To get past that. Assuming it is bare bones or whatever, how do you get over the hurdle? But I believe the law of this statute is that a bare bones affidavit submitting a bare bones affidavit is bad faith on the part of the officer. He's not entitled to immunity where he just submits something that recites conclusory statements. Why didn't he state a probable cause that a crime had occurred, i.e., that is stalking? Did he say that Mr. Jordan had followed the niece and stalked her? No. There was never any contact between them. It was solely letters directed to third parties. And the content of these letters was not described. It was not even stated that the letters were in any way directed to the alleged victim or an attempt to communicate with her. There was nothing stated regarding the letters except that they were sent to, quote, employers and clients. That's it. You're relying on a claim under the Malley case where an officer presents an application for a warrant and he should know he doesn't have probable cause in the application. Precisely. He should have known that in order to say that this conduct constituted stalking, that he had to describe the letters in some regard. It would have only taken like one word. If he had said these letters included threats. My recollection, though I haven't read the whole record, indicated that Officer Brumfield said that he relied on the testimony of Lene Sins Crowley and not just the letters in writing his affidavit. Is that correct or not? Yes, but he would have to describe the contents of the letters to determine whether the reasonable person standard conveyed anything that would cause emotional distress. I got you about the letters. I asked you a different question. I see. My understanding was that Officer Brumfield alleged that he relied not just on the letters, which your client denied he wrote, and there's no assertion that the letters in and of themselves contained a threat within them. But my understanding of it was they relied on testimony or statements from Lene Sins Crowley. I'm asking you whether that's your understanding of what was asserted or not and what do you understand that statement or information to have been. I got you on the letters. I can only say what the affidavit actually said, which is just if she only came up to him and said, somebody sent letters to some of my employers and clients and I didn't like it and I felt subjective emotional distress, that's all I can gather along with and he was annoying in court in 2009. Again, this is not I can't tell exactly what was said You've just spent a lot of time telling us all the facts and I'm trying to get you within what you've got to get over, not so much on the facts. You didn't argue the Monell or the failure to train and all that. Do you want to just rely on your brief on those points? I do, frankly. I've had a previous case with AFRIC. He said he's never seen a Monell case that was successful. I'm really not sure I'd ever get it past AFRIC anyway. Judge AFRIC. You've got a red light. I just wanted to give you while you've got your moments here to get you to comment on those. There may be other questions from the panel. Judge Jensen, do you have other questions? Go ahead. No. Thank you, sir.